## ULMER *vs.* HILLS.

Subsequent possession by the vendor, of the thing sold, is never taken as con-
clusive evidence of fraud; but is to be considered by the jury in connexion with
any explanatory proof which may be adduced.

Where a party was notified to attend at the taking of a deposition on the Saturday
before court, and attended accordingly, but it was not taken; and he was given
to understand that it would not be taken; but was afterwards notified to attend
in the forenoon of the following Monday, being the last day of the vacation, and
also the day of the annual election of State officers, at which time he did not at-
tend; it was held that the deposition, taken under these circumstances, was very
properly rejected.

THIS was an action of trespass, for taking and carrying away the
plaintiff's horse; and was tried before *Parris J.* upon the general
issue.

The plaintiff proved that in *July* 1826, he, as a deputy sheriff,
had in his hands for collection an execution against *Samuel Quig-
gle & al.;* that *Quiggle* agreed to sell him the horse, he agreeing
to pay the creditor the amount of the execution; that the horse was
accordingly delivered, with a bill of sale, to the plaintiff, at his own
door; whereupon the plaintiff discharged the execution, and paid
the amount to the creditor.

The defendant proved that after the horse was thus delivered to
the plaintiff, *Quiggle* requested permission to take him home; to
which the plaintiff assented, saying he might keep the horse till he
should call for him, which might be the next day; but giving di-
rections how he should be kept, to improve in flesh. The horse re-
mained in *Quiggle's* possession, the plaintiff occasionally calling to
see him, and giving directions how he should be kept, till *May* 22,
1828, when the defendant, who was an officer, seized him under an
execution against *Quiggle.*

It further appeared that in 1827, while the horse was in *Quiggle's*
possession, he gave a bill of sale of him to *Daniel F. Harding*, Esq.
who had become his surety, or had paid a debt for him; but the

horse was not produced, nor was any actual possession of him ever taken by Mr. *Harding ;* and that the plaintiff was soon afterwards informed that the horse had been thus conveyed, and that *Quiggle* expected soon to pay the debt and redeem him ; to which the plaintiff replied " very well, neither he nor any other person can hold him from me."

The defendant offered the deposition of one *Boggs,* taken about thirty five miles from the place of trial, on the day before the sitting of the Court, being the first Monday in *September,* and the day of the annual State elections; and it appeared that the plaintiff had been notified to attend at the taking of this deposition on the Saturday previous ; and had attended accordingly; but the defendant declined taking it on that day, and gave the plaintiff to understand that it would not be taken ; but afterwards served him with a new notice for the Monday following. Under these circumstances, the plaintiff objecting to the deposition, it was rejected.

The counsel for the defendant requested the Judge to give the jury certain specific instructions, to the following effect :—that if *Harding* had no previous knowledge of the sale to the plaintiff, and took possession by *Quiggle,* the sale to him was good against the plaintiff, and operated to bar this action :—that the plaintiff was barred by acquiescing in that sale from the time it was made, till the taking by the defendant;—that at all events the plaintiff, after an absolute purchase, having suffered the property to remain so long in the possession of the vendor, could not now set up his title, against an attaching creditor of the vendor :—and, that if he could, yet he was bound to show a good and satisfactory reason for the continuance of such possession in the vendor ; and that the accommodation and convenience of the vendor was not a sufficient reason.

But the Judge instructed them that the vendor's possession was a strong mark of fraud ; which, however, was removable by clear and satisfactory evidence ; which it was incumbent on the plaintiff to produce, and to remove all suspicion of fraud :—that if they were satisfied that the sale to the plaintiff was actual, *bona fide,* for a full consideration, and without any secret trust for the vendor, and that

his subsequent possession was fairly accounted for, as consistent with perfect honesty in the transaction ; the plaintiff's title was good ; unless he assented to the sale to *Harding'* ; of which they were to judge from the evidence. And they found for the plaintiff ; the Judge reserving the questions of law raised at the trial, for the opinion of the Court.

*Harding*, for the defendant, read an argument sent by *Sprague*, who was at Congress in his place as a Senator of this State. He contended that the deposition ought to have been admitted, because it was taken with all the formalities of law, with none of which could the Court dispense, neither could they impose any other. If any inconveniencies arise from the existing law, the remedy is with the legislature alone.

Upon the merits of the case he argued that where a vendee, by an absolute sale, suffers the vendor to retain the possession as before, to hold out to the world the same *indicia* of ownership, and to make a second sale, to an innocent purchaser, who consummates his title before any actual possession by the first ; the first purchaser was estopped to set up his title against the second. It is against the principles of law ; and is forbidden by public policy ; by mercantile good faith ; by the favor the law shows to the vigilant ; and by all the inducements to suppress fraud. It is no valid answer to say that the intentions of the vendor and first vendee were honest. The objection lies deeper than their intention, in the wide spreading mischiefs which result from relaxing the rule in favor of such parties, however honest their particular intentions. If the rule may be relaxed in any case, and the possession of the property be still retained by the vendor ; his own convenience and accommodation form no sufficient reason ; and the jury ought so to have been instructed. To hold the law otherwise, is to lend facilities for the perpetration of fraud to an extent limited only by the interest of the parties.

But however the general rule may be taken, yet the conduct of the plaintiff does not entitle him to hold the property. He gave the original owner every facility for imposing on innocent third persons, by appearing still to own the horse as before ; and after receiving

notice of the sale to *Harding*, he expressed no dissent, and gave *Harding* no notice of any claim of his own. This conduct ought to have been ruled at least a ratification of the second sale. *Bad-lam v. Tucker*, 1 *Pick.* 284 ; *Bartlett v. Williams, ib.* 288 ; *Lan-fear v. Sumner*, 17 *Mass.* 110 ; *Lamb v. Durant*, 12 *Mass.* 54.

*Ruggles* for the plaintiff.

MELLEN C. J. delivered the opinion of the Court.

On examination of the facts in relation to the deposition of *Boggs* we think it was properly rejected. The plaintiff was noti-fied to attend to the taking of it on the Saturday afternoon preced-ing the session of the court at last *September* term. His counsel attended for the purpose, but the counsel for the defendant omitted to take it, though urged so to do, and gave the plaintiff to under-stand that he did not intend to take it ; notwithstanding which, a new notice was served on the plaintiff to attend on *Monday* fore-noon, being the day before court, and the day of the election of governor, senators and representatives ; and the place of caption being about thirty-five miles from the place of trial. In addition to the circumstance that the plaintiff is presumed to have been trav-elling to court on the preceding day, we consider the conduct of the defendant's counsel on Saturday, as amounting to a waiver of all answer to the objection now urged by the plaintiff, and of the right to use the deposition under the circumstances of the case.

In respect to the main question, we are at a loss to discover on what grounds it could have been anticipated that the court should pronounce the instructions of the presiding Judge as incorrect. Those instructions are in perfect accordance with principles which have been settled, sanctioned and recognised over and over again in Massachusetts and in this State ; and the practice in both has been in unison with those decisions. The possession of property sold, by a grantor or vendor, after the sale, though that sale be ab-solute, is not fraud *per se* ; it is only evidence, and generally strong evidence of fraud, to be submitted to a jury, with proper instruc-tions, as was done in the present case. Such continued possession

42

may be explained and accounted for on principles perfectly consistent with truth and justice.

The requested instructions were at variance with a series of decided cases. It is needless to cite them, and it would seem to be useless to continue to increase their number.

*Judgment on the Verdict.*